UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID M. DAVIS,

    Petitioner,

vs.

CLARK DUCART,

    Respondent.

No. 2:16-cv-0733-JAM-EFB P

FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding without counsel on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] He challenges a judgment of conviction entered against him on December 5, 2012 in the Sutter County Superior Court on charges of: (1) child cruelty pursuant to Cal. Penal Code § 273d(a); (2) dissuading a witness pursuant to Cal. Penal Code § 136.1(c)(1); (3) spousal abuse pursuant to Cal. Penal Code § 273.5(a); and assault with a weapon pursuant to Cal. Penal Code § 245(a)(1). He seeks federal habeas relief on the following grounds: (1) he is actually innocent; (2) his rights were violated when the state court failed to interpret his plea agreement according to "California Contract Law"; and (3) his trial counsel was ineffective.

/////

---

[1] The matter has been referred to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

1

For the reasons stated below, petitioner's application for habeas corpus relief must be denied.

**I.   Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant David Marshall Davis and his stepson, 16 year-old D.W., were cleaning out a room in the family home when D.W. fell asleep. Defendant threw a plastic object at D.W., striking his right eye. Defendant also punched him in the ribs about 10 times. As a result, D.W. had a horizontal line across his field of vision which did not heal.
>
> Later that week, defendant assaulted his cohabitant, D.W.'s mother Page G. He pushed her against the kitchen wall, hit her in the face with a closed fist, and threw her to the ground. Page G. was three months pregnant with defendant's child. While she was on the ground, defendant stomped on her stomach with his foot and yelled that he hoped she would miscarry. He also threatened to kill Page G. if she got law enforcement involved. D.W. distracted defendant by letting the dogs in, and then fled with his mother.
>
> In a search incident to defendant's arrest, officers found a marijuana growing facility in one of the rooms. Wiring for the operation was stripped and spliced and hanging exposed instead of inside a junction box. Exposed electrical wiring emerged from the sheetrock as well. A search warrant was later executed on the residence. Officers found 390.88 grams of marijuana in a paper bag, a sheet of paper indicating the respective values of different amounts of marijuana, and 21 jars containing a total of 384.28 grams of marijuana.
>
> While in jail, defendant called Page G. and instructed her to have D.W. testify that he made up the whole story because he was angry at defendant.
>
> Defendant was charged in case No. CRF121011 with corporal injury to a child with great bodily injury (Pen. Code, §§ 273d, subd. (a), 12022.7, subd. (a); undesignated statutory references are to the Penal Code), child endangerment (§ 273a, subd. (a)), corporal injury to a cohabitant (§ 273.5, subd. (a)), dissuading a witness (§ 136.1, subd. (c)(1)), criminal threats (§ 422), assault by means likely to cause great bodily injury (§ 245, subd. (a)(1)), misdemeanor false imprisonment (§§ 236, 237), and possession of marijuana for sale (Health & Saf. Code, § 11359).
>
> A few days after being released from jail, defendant confronted D.W. and accused him of stealing some marijuana. D.W. denied stealing marijuana, but admitted selling some while defendant was in jail. Defendant and Page G. told D.W. to leave the home; D.W. went to

> his girlfriend's residence. Defendant and Page G. drove D.W. home the following day. After Page G. and their other children left, defendant confronted D.W. in the room where the marijuana was grown. Defendant, armed with an aluminum baseball bat, told D.W. he would knock his head off if he said anything stupid. When D.W. continued to deny stealing the marijuana, defendant struck him in the shin with the bat. Defendant left the residence when Page G. and the children returned.
>
> Defendant was subsequently charged in case No. CRF121645 with corporal injury to a child with personal use of a deadly weapon (§§ 273d, subd. (a), 12022, subd. (b)(1)), criminal threats with personal use of a deadly weapon (§§ 422, 12022, subd. (b)(1)), dissuading a witness (§ 136.1, subd. (b)(1)), subornation of perjury (§ 127), assault with a deadly weapon (§ 245, subd. (a)(1)), and on bail enhancements for all counts (§ 12022.1).
>
> Pleading in both cases, defendant pleaded no contest to corporal injury to a child, corporal injury to a cohabitant, dissuading a witness, and assault with a deadly weapon, and admitted great bodily injury and on bail enhancement. The remaining charges were dismissed with a *Harvey* waiver. (*People v. Harvey* (1979) 25 Cal.3d 754.) The trial court sentenced defendant to 16 years in state prison, imposed various fines and fees, and awarded 166 days of credit (145 actual and 21 conduct) in case No. CRF12011 and 93 days of credit (81 actual and 12 conduct) in case No. CRF121645 (§ 2933.1). In a subsequent proceeding, the trial court ordered $1,681.50 victim restitution to Medi–Cal for Page G.'s and D.W.'s medical expenses and $120 to the home's owner for damages resulting from defendant's marijuana operation.

*People v. Davis*, 2013 Cal. App. Unpub. LEXIS 6396, 2013 WL 4780963, at *1–2 (Cal.App. 3 Dist., 2013) (unpublished).

## II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

3

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34, (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v.*

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

*Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be

---

384 F.3d 628, 638 (9th Cir. 2004)).

5

presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 293 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claims**

  **A. <u>Actual Innocence</u>**

  In his first claim, petitioner argues that his conviction must be vacated because he is actually innocent. In support of this claim, he argues that witness De-Anthony Ward gave false testimony against him. ECF No. 29 at 9-10.[3] Petitioner points to a signed statement attached to his original petition wherein Ward recants statements he provided to law enforcement. ECF No. 1 at 74-76.

    **1. <u>Applicable Legal Standards</u>**

  The Supreme Court has never decided whether a freestanding claim of actual innocence is cognizable in federal habeas corpus. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *see also DA's Office v. Osborne*, 557 U.S. 52, 71 (2009). Assuming such a claim was cognizable, a petitioner would have to meet an "extraordinarily high" bar to establish actual innocence. *House v. Bell*, 547 U.S. 518, 554 (2006).

    **2. <u>The State Court's Ruling</u>**

  Petitioner did not present a claim based on actual innocence to the state courts.

    **3. <u>Analysis</u>**

  As a preliminary matter, respondent argues that this claim is unexhausted and the court agrees. Nevertheless, the court concludes that this claim fails on the merits and elects to dispose of it on those terms. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

  The court finds that the recantation statement from Ward is insufficient to carry petitioner's burden of establishing actual innocence. The Ninth Circuit, drawing from language

---

[3] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

in Justice Blackmun's dissent in *Herrera*, has determined that a petitioner claiming actual innocence must "go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (*citing Herrera*, 506 U.S. at 442-44 (Blackmun, J., dissenting)). The recantation evidence offered by petitioner is inadequate to this task. In *Jones v. Taylor*, the Ninth Circuit rejected a petitioner's actual innocence claim where he relied solely on recantation testimony. 763 F.3d 1242, 1248 (9th Cir. 2014). "As a general matter, recantation evidence is viewed with great suspicion." *Id.* (citing *Dobbert v. Wainwright*, 468 U.S. 1231, 1233 (1984) (Brennan, J., dissenting from denial of certiorari) (internal quotation marks omitted)). "Recanting testimony is easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial." *Id.* (citing *Carriger*, 132 F.3d at 483 (Kozinski, J., dissenting) (internal quotation marks omitted)). A witnesses' "later recantation of his trial testimony does not render his earlier testimony false." *Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2004). As respondent correctly notes, Ward's recantation is suspect insofar as he had changed his accounting of events once before and noted that he was afraid of petitioner. 1CT[4] at 145-46; 2CT 342-43. Petitioner took responsibility for this prior recantation after he entered his plea. 2CT at 342.

Based on the foregoing, the court finds that petitioner has failed to carry his heavy burden of establishing that he is actually innocent and this claim should be denied.

### B.     **Unknowing Plea**

Next, petitioner claims that his plea of no contest was not knowing. He argues that the trial court failed to advise him of the ultimate consequences of his plea and the rights he would waive by entering such a plea. ECF No. 29 at 11-12.

#### 1.     **Applicable Legal Standards**

The Supreme Court has held that, to satisfy due process, a guilty plea "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant

---

[4] "CT" refers to the Clerk's Transcript on Appeal.

circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). However, "the Constitution . . . does not require complete knowledge, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 625 (2002). To determine whether a plea is voluntary a federal habeas court must consider all of the relevant circumstances surrounding it. *Brady*, 397 U.S. at 749. These circumstances include, for example, "the possibility of a heavier sentence following a guilty verdict after a trial." *Id.* A plea is intelligent if a defendant "was advised by competent counsel, he was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties." *Id.* at 756.

### 2. State Court Decision

Petitioner raised this claim in his habeas petition submitted to the California Supreme Court. Lodg. Doc. 7. The petition received a silent denial. Lodg. Doc. 8.

### 3. Analysis

The record indicates that petitioner's plea was knowing and intelligent. He was represented by counsel and his counsel told the superior court that he had explained the plea agreement to the petitioner. RT[5] at 45, 47. The superior court asked petitioner to verify his signature and initials on the plea forms. *Id.* at 47-48. It then asked whether petitioner had any questions about 'anything' before he entered his plea. *Id.* at 48. Petitioner responded that he did not. *Id.*

Petitioner argues that he was not advised of: (1) 'any of the consequences' of his plea; (2) his constitutional rights; and (3) the 'direct consequences' of his plea. ECF No. 29 at 10-12. He contends that his counsel promised that he would receive probation. *Id.* at 12. The plea forms which petitioner signed and initialed, however, contained various advisements concerning the maximum penalties and waiver of rights. 1CT at 272-80, 286-94. These plea forms noted that

/////

---

[5] "RT" refers to the Reporter's Transcript.

petitioner faced the possibility substantial prison time. *Id.* at 272, 286. With respect to the possibility of probation, petitioner initialed the following stipulations:

> (1) I understand the minimum and maximum sentence for the charges and allegations to which I am pleading. No one has made any other promises to me about what sentence the court may order.
>
> (2) I understand that I am not eligible for probation.
>
> (3) I understand that I will not be granted probation unless the court finds at the time of sentencing that this is an unusual case where the interests of justice would be best served by granting probation.

*Id.* at 273, 287. Additionally, in sections titled 'constitutional rights' and 'waiver of constitutional rights' petitioner initialed next to various stipulations indicating his understanding of his constitutional rights and his waiver of those rights. *Id.* at 278-79, 292-93. As noted above, petitioner was asked by the superior court whether these initials were his and he stated that they were. RT at 48. Petitioner now contends that he did not actually read this form because his counsel was in a rush to return the forms to the prosecutor. ECF No. 29 at 12. He had an opportunity to state as much during his plea hearing, however, when the superior court asked whether he had any questions. RT at 48. Instead, petitioner answered that he had no questions regarding his plea. *Id.* The superior court then read each charge aloud and asked petitioner for his plea on each. *Id.* at 48-49. Petitioner entered pleas of no contest to each. *Id.* Additionally, the superior court asked petitioner's counsel whether he had an opportunity to discuss the pleas and admissions with petitioner. *Id.* at 47. Petitioner's counsel stated that he had done so and was satisfied that petitioner understood the plea agreement. *Id.* It is settled that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner has not carried his burden of establishing that the plea was not knowing. *See Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006) ("A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing").[6]

/////

---

[6] Under California law a plea of no contest is equivalent to a guilty plea. *See* Cal. Penal Code § 1016; *People v. Mendez*, 19 Cal. 4th 1084, 1094-95 (1999).

10

Finally, petitioner's contention that the state courts failed to interpret his plea agreement in accordance with California contract law does not state a viable federal habeas claim. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[A]lleged errors in the application of state law are not cognizable in federal habeas corpus.").

Based on the foregoing, the court finds that the California Supreme Court's denial of this claim was not contrary to, nor an unreasonable application of clearly established federal law.

### C. **Ineffective Assistance of Counsel**

Plaintiff raises five grounds on which his counsel was allegedly ineffective. These are: (1) counsel advised him to take the plea agreement without explaining the consequences of that plea; (2) counsel told petitioner he could secure a probation sentence which petitioner was not eligible for; (3) counsel failed to investigate petitioner's mental disability; (4) counsel submitted 'fraudulent' information to the court in his attempt to secure probation for petitioner; and (5) counsel told petitioner he would withdraw if petitioner declined to take the plea. ECF No. 29 at 18-23.

#### 1. **Applicable Legal Standards**

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 at 104 (quoting *Strickland*, 466 U.S. at 687).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the
/////

11

outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

### 2. State Court Decision

In his habeas petition to the California Supreme Court, petitioner raised his ineffective assistance claims regarding: (1) the failure to investigate his competence; (2) the submission of fraudulent information; and (3) the failure to advise petitioner of the consequences of the plea. Lodg. Doc. 7. This petition received a silent denial. Lodg. Doc. 8.

### 3. Analysis

Petitioner's ineffective assistance claims are unavailing. As a preliminary matter, not all of his current claims were raised in his habeas petition to the California Supreme Court and, thus, not all were exhausted.[7] Nevertheless, the court finds it more efficient to dispose of each of these contentions on the merits. *See* 28 U.S.C. § 2254(b)(2).

#### a. The Consequences of the Plea

The court has already found that petitioner has not carried his burden of establishing that his plea was not knowing. As noted above, petitioner signed and initialed statements indicating that he: (1) understood the penalties he could be subject to as part of his plea; (2) understood the constitutional rights he was waiving in electing to plead no contest; and (3) that he had discussed the plea agreement with his attorney and understood its effects and contents. 1CT at 278-79, 292-93. At his plea hearing, after being asked whether he had any questions about the plea, plaintiff stated he did not. RT at 48. Thus, based on these statements by the petitioner in open court this court finds that petitioner has failed to show that his counsel did not inform him of the possible consequences of his plea.

To the extent petitioner alleges that his counsel rendered ineffective assistance simply by advising him to accept the plea, that claim also fails. The plea agreement dismissed various charges which, if included and proven at trial, would have increased petitioner's prison exposure

---

[7] The two unexhausted claims are: (1) that counsel misled him into believing he was eligible for probation and; (2) that counsel threatened to discontinue representation if he moved to withdraw his no contest plea.

1  to a maximum of twenty-six years. ECF No. 38 at 16 n. 2; *People v. Davis*, 2013 Cal. App.
2  Unpub. LEXIS 6396, 2013 WL 4780963, at *1–2 (Cal.App. 3 Dist., 2013) (unpublished). Thus,
3  the court concludes that it was not outside the range of professionally competent assistance to
4  advise petitioner to accept the plea agreement. Additionally, petitioner had the tools necessary to
5  make an informed decision as to whether to accept the plea agreement. *See Turner v. Calderon*,
6  281 F.3d 851, 881, (9th Cir. 2002) (finding that counsel's advice was not deficient where
7  petitioner had the "tools he needed to make an informed decision – the critical information and
8  the time to think about it.").[8] Nor is petitioner entitled to relief merely because his counsel
9  erroneously predicted that he would receive probation.[9] *See Chizen v. Hunter*, 809 F.2d 560, 561
10 (9th Cir. 1986) (no habeas relief where petitioner's counsel "erroneously *predicted* the favorable
11 consequences of a guilty plea") (emphasis in original).

### b.     **Eligibility for Probation**

Next, petitioner claims that his counsel was deficient in seeking a probation sentence because he was ineligible for probation. Although petitioner was presumptively ineligible for probation, the fact remained that he could receive probation if the superior court concluded that his was the "unusual case where the interests of justice would be best served" by such a sentence. Cal. Penal Code § 1203(e). An "unusual case" may be found where a "fact or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense" is present. Cal.

---

[8] The court recognizes that petitioner now states, without any evidence, that he did not actually read the plea agreement which he initialed, signed, and declined to ask any questions about. These self-serving statements are insufficient to establish that petitioner was not fully advised of his options. *See United States v. Allen*, 153 F.3d 1037, 1041 (9th Cir. 1998) (citing *Cuppett v. Duckworth*, 8 F.3d 1132, 1139 (7th Cir. 1993)(en banc) ("Self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions."); *Womack v. McDaniel*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting ineffective assistance claim where "[o]ther than [petitioner's] own self-serving statement, there is no evidence that his attorney failed to discuss potential defenses with him.").

[9] Petitioner alleges that his counsel assured him that he would receive probation, but there is no evidence that his counsel guaranteed rather than merely predicted that outcome. And, as noted above, the plea forms which petitioner initialed and signed stipulated that he understood the maximum and minimum sentences to which he was pleading and that no one had made any other promises to him about what sentence he might receive. 1CT at 273, 287.

13

1  R. Ct. 4.413(a)-(c). One example articulated in the California Rules of Court is where "[t]he
2  crime was committed because of a mental condition not amounting to a defense, and there is a
3  high likelihood the defendant would respond favorably to mental health care and treatment as
4  would be required as a condition of probation." Cal. R. Ct. 4.413(c)(2)(B).

Respondent notes, and the record supports, that petitioner's counsel went on to argue that petitioner's crimes resulted from his alcoholism. RT at 64-65. Counsel stated that petitioner had been successful in battling his alcoholism for about a decade, until he experienced a relapse following the death of his mother. *Id.* at 66. Petitioner's wife offered testimony at the sentencing hearing that, prior to his relapse, he had been a "wonderful husband", had held a job, and been involved in the lives of his children. *Id.* at 60. Finally, petitioner's counsel had secured a bed for him at an inpatient treatment program. 2CT at 356. The superior court ultimately found that petitioner's was not an unusual case that merited probation, but the fact remains that probation was not, as petitioner implies in his petition, an impossibility. Accordingly, the court cannot say that counsel's strategy fell outside the range of competence demanded of attorneys in criminal cases. The court notes that it must review counsel's performance deferentially and apply a strong presumption that it was within the wide range of competence. *Strickland*, 466 U.S. at 689. The fact that an attorney's strategy was unsuccessful or that other strategies could have been pursued does not mandate a finding of ineffective assistance. *Id.* ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."); *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994) ("We will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight.").

### c. <u>Failure to Investigate Petitioner's Mental Disability</u>

The court concludes that petitioner has failed to establish that he was prejudiced by his counsel's failure to investigate his mental disability. The standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United*

*States*, 362 U.S. 402 (1960)). Petitioner's comportment during the superior court proceedings indicated that he was capable of understanding those proceedings, consulting with his counsel, and making a knowing plea. As noted above, he was questioned prior to the entry of his plea by the superior court and answered the questions cogently. RT at 47-48. Additionally, during an interview with a probation officer, petitioner described his alcoholism, indicated his desire to accept responsibility for his actions, and emphasized that he was not the person he "appears to be on paper." 2CT at 341-42. His actions and responses evince a rational understanding of the proceedings against him.

As evidence of his incompetence, petitioner points to: (1) a June 4, 2014 hand-written statement from his wife which states that petitioner has post-traumatic stress disorder, paranoid thoughts, and hears voices (ECF No. 1 at 37); (2) a June 4, 2014 statement from his father which states that petitioner is mentally disabled and on numerous medications for his disability (*id.* at 40); and (3) evidence of social security disability payments (*id.* at 42). None of these exhibits establish that petitioner was incapable of rationally or factually understanding the proceedings against him. The fact that petitioner had mental health issues which required medication does not automatically establish that he lacked competence to stand trial.

To the extent petitioner is arguing that his counsel should have investigated the possibility of an insanity defense, that claim also fails. A successful insanity defense under California law requires the trier of fact to find that it is more likely than not that the defendant "was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense." Cal. Penal Code § 25(b). There was no evidence which suggested that petitioner was incapable of understanding the nature of his acts or of distinguishing right from wrong at the time of his offenses. To the contrary, the record indicates that petitioner threatened his wife the day after he assaulted her and advised her not to report the previous evening's assault to the police. 2CT 331-32. This evidences that petitioner was capable of understanding the nature of his actions and of distinguishing right from wrong.[10]

---

[10] To the extent petitioner argues that he could have staked an insanity defense based on his inebriation, that claim fails. *See People v. Cabonce*, 169 Cal. App. 4th 1421, 1434 (2009)

Thus, petitioner was not prejudiced by his counsel's failure to investigate an insanity defense.

#### d. **Submission of Fraudulent Information**

Petitioner alleges that his counsel offered "fabricated lies" in his statement in support of a sentence of probation. ECF No. 29 at 22-23. These lies included that petitioner had held a job for six years and that, at one point, he had been free from alcohol for over a decade. *Id.* at 23. As respondent persuasively argues, however, these lies actually helped petitioner's case for probation insofar as they supported the notion that probation and substance treatment would better serve the interests of justice than a prison sentence. Thus, assuming counsel lied rather than simply misstated facts, there is no evidence that petitioner suffered any prejudice.

#### e. **Threat to Withdraw**

Petitioner argues that his counsel rendered ineffective assistance by informing him that he would no longer represent petitioner if he moved to withdraw his no contest plea. ECF No. 29 at 22. This claim fails because, as noted in the petition, the purported threat to discontinue representation came *after* petitioner had already entered his plea. *Id.* Thus, the court cannot say, assuming the truth of petitioner's allegation, that he was coerced by counsel into entering his plea. And the Supreme Court has never held that the *Strickland* standard applies in the context of a motion to withdraw a plea of no contest. *See Missouri v. Frye*, 566 U.S. 134, 140 (2012) ("The Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings. . . . [c]ritical stages include arraignments, postindictment interrogations, postindictment lineups, and the *entry of a guilty plea*.") (internal citations and quotation marks omitted) (emphasis added); *see also Monterrosa v. Belleque*, 2008 U.S. Dist. LEXIS 2172, 2008 WL 123858, *6 (D. Or. Jan. 8, 2008); *Miller v. Cate*, No. CV 13-1041 JLS (JC), 2015 U.S. Dist. LEXIS 123821, *38 (C.D. Cal. May 8, 2015). It is even less clear that *Strickland* would apply in this instance, where petitioner never actually moved to withdraw his plea. Nor has petitioner established that he was prejudiced by his counsel's ultimatum. Had he

---

("Thus, there can be no insanity defense when the inability to tell right from wrong [is] derived (1) solely from an addiction or abuse of intoxicating substances, or (2) from a mental defect or disorder that itself was caused solely by such addiction or abuse.").

desired to move to withdraw his plea, petitioner could have notified the court of his irreconcilable conflicts with retained counsel and sought a substitution – either of newly retained or appointed counsel. Whether the superior court would have permitted substitution or an ultimate withdrawal of petitioner's plea is uncertain, but the court need not speculate on this point to resolve this issue. The fact remains that petitioner could have moved forward with his attempt to withdraw his plea prior to his sentencing hearing and evidently chose not to.

**IV.	Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: June 18, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE